Filed 10/28/25  P. v. Jimenez CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　v.<br><br>ALEJANDRO JIMENEZ,<br><br>　　Defendant and Appellant. | B338884<br>(Los Angeles County<br>　Super. Ct. No. NA103252) |

APPEAL from a judgment of the Superior Court of Los Angeles County, James D. Otto, Judge.  Affirmed.

Jennifer Peabody and Richard B. Lennon, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri, Supervising Deputy Attorney General, and Lauren N. Guber, Deputy Attorney General, for Plaintiff and Respondent.

## INTRODUCTION

At a full resentencing hearing pursuant to Penal Code section 1172.75,[1] the trial court reduced defendant Alejandro Jimenez's prison sentence from 37 years to life to 25 years to life. On appeal, Jimenez argues that the trial court abused its discretion by not dismissing his prior strikes pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*). We reject his argument and affirm the judgment.

## FACTUAL BACKGROUND

We take judicial notice of our opinion, written by a different panel of this court, resolving Jiminez's direct appeal. (*People v. Jimenez* (Mar. 5, 2019, B283211) [nonpub. opn.]; Evid. Code, § 452, subd. (a).) The following summary of the prosecution evidence adduced at Jimenez's trial is taken from *Jimenez I.*

A. *The Shooting*

At approximately midnight on November 20, 2015, Officer Sterling Byrd of the Los Angeles Police Department (LAPD) responded to a report of someone "armed with a deadly weapon" at a 24-hour gas station located at 227th Street and Western Avenue in Torrance. No victim or suspect was present when he arrived. Officer Byrd saw a gunshot hole in a rear wall of the gas station and blood next to it. Near one of the pumps, he saw two additional gunshot holes and three nine-millimeter casings. He found one spent round, but could not determine whether it came from a nine-millimeter or .45 caliber casing.

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

The gas station cashier told Officer Byrd that she was assisting a female customer at the window when a Hispanic man walked up with a skateboard and slammed it on the ground. A male Hispanic at the pumps pointed a gun and yelled, "[Expletive] that, I'm gonna get that [expletive]," and fired three or four shots in the direction of the pumps. The cashier dropped to the ground and heard three more shots, possibly from another gun.

Officer Rene Avila and her partner also responded. Checking with local hospitals, Officer Avila learned a gunshot patient was being treated at Harbor UCLA Medical Center. She and her partner went there and met the victim, Fernando Lozano. He had been shot in the left arm. Lozano was uncooperative and did not respond to any of her questions.

The gas station was equipped with more than a dozen motion-activated security cameras. LAPD Detective Brian Williams, then a gang detective, created a video of screen shots from the surveillance videos. Detective Williams testified as the soundless video was played for the jury. The video depicted the victim's light-colored sedan arrive first and pull up to a pump on the second row, farthest from the cashier's window; the passenger side was next to a pump. Jimenez's blue SUV pulled through the lane adjacent to the cashier's window and turned around, parking in the lane between the two rows of pumps, with the driver's side next to a pump.

The victim walked toward the cashier's window. Jimenez looked to the rear of his vehicle and also walked to the cashier's window. Jimenez appeared to be holding a firearm, but the victim's hands were empty. The two men appeared to exchange words.

Jimenez came back into view, crouched by the hood, and appeared to fire a gun toward the victim's car. Jimenez drove away. The victim returned

3

to his car and drove off.  Although the video did not show the license plate of the SUV, Officer Williams believed the vehicle belonged to Jimenez based upon previous photographs he had seen of Jimenez's car.

The prosecution called Lozano as a witness.  Other than stating his name, Lozano refused to answer any questions and repeatedly insisted, "I don't know nothing."  The cashier could not be located at the time of trial, and Officer Byrd testified as to her interview statements.  Officer Byrd also viewed the surveillance videos/screen shots.  He did not see a skateboard in the hands of the victim and did not see one of the men point a gun at the gas pumps.

On December 15 or 16, 2015, Detective Williams executed a search warrant for a residence in Torrance.  The officer located an SUV in the garage; the VIN number matched the SUV registered to Jimenez.  The vehicle had paper plates on it, and the rear windshield was shattered.  The officers left the vehicle in the garage, and the police monitored the house in an attempt to locate Jimenez.

B. *The High-Speed Car Chase*

At approximately 9:45 p.m. on December 26, 2015, LAPD Officer Jose Arranaga and his partner, assigned to the gang enforcement detail of Harbor Division, were on patrol, in uniform, and in a marked police vehicle.  Officer Arranaga noticed a familiar blue Ford SUV near 221st Street and Harvard in Torrance.  The officer had stopped Jimenez three to four times before, and he recognized the SUV as belonging to Jimenez.  The car usually had license plates on it, but this time, it displayed "paper plates."

Officer Arranaga, aware Jimenez was wanted in connection with an attempted murder, reported the sighting.  He turned on the police car's

4

overhead lights, which activated the patrol car's front-facing video camera. Jimenez sped away as soon as Officer Arranaga turned on the overhead lights. Arranaga gave pursuit, and the entire chase was recorded.

The pursuit video was played without sound for the jury. Jimenez made numerous Vehicle Code violations during the chase, which traversed streets and included a stretch on the southbound 110 freeway, where speeds reached 100 miles per hour. The pursuit ended after Jimenez exited the freeway, crashed into a curb, and hit a building. Jimenez was taken into custody.

Jimenez's passenger, Amanda Garcia, was injured and needed medical attention. LAPD Officer Blake Putnins interviewed Garcia at the hospital. She was dating Jimenez. When the police car turned its lights on behind them, Jimenez said it was "too late" and drove away.

## PROCEDURAL HISTORY

In 2017, a jury convicted Jimenez of attempted voluntary manslaughter (§§ 664/192, subd. (a), lesser included offense of count 1), evading a peace officer with wonton disregard for safety (Veh. Code, § 2800.2, lesser included offense of count 2), and assault with a firearm (§ 245, subd. (a)(2), count 3). As to count 1, the jury found true the allegations that Jimenez personally discharged a firearm (§ 12022.53, subds. (b)-(d)) and that he personally inflicted great bodily injury during the commission of the offense (§ 12022.7, subd. (a)). As to count 3, the jury found true the allegation that Jimenez personally used a firearm during the commission of the offense (§§ 1203.6, subd. (a)(1), 12022.5, subd. (a)).

In a bifurcated proceeding, the trial court found true three prior prison term enhancements (former § 667.5, subd. (b)), three strike priors (§§ 667,

5

subd. (d), 1170.12, subd. (b)), and one prior serious felony conviction (§ 667, subd. (a)).

After denying his *Romero* motion, the trial court sentenced Jimenez to a total of 37 years to life in state prison as follows. As to count 1, the court imposed 25 years to life pursuant to the Three Strikes law, plus 5 years for the prior serious felony enhancement (§ 667, subd. (a)(1)), 1 year for the prior prison term enhancement (former § 667.5, subd. (b)), 3 years for the firearm enhancement (§ 12022.5); and 3 years for the great bodily injury enhancement (§ 12022.7, subd. (a)). The same sentence was imposed and stayed pursuant to section 654 as to count 3. As to count 2, the court imposed three years doubled pursuant to the Three Strikes law plus one year for the prior prison term enhancement. The court ordered this seven year sentence to run concurrent to the sentence imposed in count 1.

On appeal, Jimenez's convictions were affirmed but the appellate court remanded the matter for a new sentencing hearing to permit the trial court to exercise its discretion to dismiss or strike the firearm and prior serious felony enhancements.[2] (§§ 667; 12022.5, subd. (c); 1385.) On August 5, 2019, the trial court stuck the five year prior serious felony enhancement (§ 667, subd. (a)). The court resentenced Jimenez to 32 years to life in state prison.

In 2022, the California Department of Corrections and Rehabilitation notified the trial court that Jimenez may be eligible for resentencing pursuant to section 1172.75.

On January 31, 2024, Jimenez filed a resentencing motion requesting that the trial court, among other things, strike his three prior strike convictions in addition to his now invalid prior prison term enhancements.

---

[2] We note that on appeal this court rejected Jimenez's contention that the trial court abused its discretion in denying his *Romero* motion.

6

The motion included various documents from Jimenez's prison file demonstrating his rehabilitative efforts.

On June 13, 2024, the court conducted a resentencing hearing. The prosecutor opposed Jimenez's request for the court to strike his prior strike convictions pursuant to *Romero*. He explained that Jimenez's three prior strike convictions stemmed from one 2008 incident involving three robbery victims. For those crimes, the trial court sentenced him to two years in state prison. Jimenez was paroled in May 2010, but violated his parole by committing a second-degree burglary and petty theft. He pled guilty to those offenses in January 2011, and received a three-year sentence. Jimenez was paroled a second time in March 2012. Sometime after this parole, he was convicted of domestic violence and driving on a suspended license. In December 2015, Jimenez was arrested for the current convictions.

The prosecutor argued the prior strike convictions were not remote, rather there was intervening incarceration leading up to his current convictions. Moreover, the prosecutor stated Jimenez's conduct during the most recent offenses was inherently dangerous. Jimenez shot the victim at a gas station with bystanders nearby. A few weeks later, Jimenez then led a high-speed chase with police, again endangering lives of others. He ended up crashing the vehicle and injuring his passenger. While the prosecutor acknowledged Jimenez has "done well in prison," he stated that Jimenez has also only served a small portion of his sentence at this point. In response, defense counsel argued most of the prior strike convictions occurred when Jimenez was "under 20 years old."[3] Counsel noted he submitted documents to the court reflecting his good behavior and rehabilitation efforts in prison.

---

[3] We note that Jimenez was 23 years old at the time he committed the three robberies, not "under 20 years old."

7

The trial court denied Jimenez's *Romero* motion. The court acknowledged he had "done well in prison," but "that doesn't change the fact that this is an appropriate Three Strikes case." The court struck two prior prison term enhancements. The court then stayed the gun and great bodily injury enhancements as to count 1. Jimenez was resentenced to 25 years to life as to count 1 and the sentence as to count 3 remained stayed pursuant to section 654. The seven-year concurrent sentence as to count 2 was untouched.

Jimenez timely appealed.

## DISCUSSION

Jimenez contends the trial court abused its discretion in denying the motion to strike his prior strike convictions pursuant to *Romero*. We conclude the record does not support this contention.

A trial court must make its decision whether to strike a prior conviction by considering factors that are intrinsic to the Three Strike law's sentencing scheme. (*People v. Williams* (1998) 17 Cal.4th 148, 161.) The factors a trial court must consider include: (1) the nature and circumstances of the current conviction; (2) the nature and circumstances of the prior strike convictions; and (3) the defendant's "background, character, and prospects." (*Ibid*.) If the defendant falls outside the spirit of the Three Strikes law, the court may, in furtherance of justice, treat the defendant "as though he had not previously been convicted of one or more serious and/or violent felonies." (*Ibid*.; see also *Romero, supra*, 13 Cal.4th at pp. 529–530; § 1385, subd. (a).) We review a trial court's denial of a *Romero* motion for abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 373.) "[A] trial court does not abuse its

8

discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Id.* at p. 377.)

Here, the trial court had before it ample evidence that Jimenez was precisely the type of repeat criminal for whom the Three Strikes law was enacted. (See *People v. Gaston* (1999) 74 Cal.App.4th 310, 320, disapproved on another ground in *People v. Dain* (2025) 18 Cal.5th 246, 265, fn. 5.) Jimenez committed his three prior strike convictions at age 23 and then committed the underlying offenses in this case at age 30. When Jimenez was not incarcerated during this seven-year period, he repeatedly violated the terms of his parole and committed additional crimes. Moreover, the most recent offenses involved Jimenez shooting the victim at a gas station in the presence of bystanders. Then, several weeks later, Jimenez led the police on a high-speed chase that ended when Jimenez was involved in a traffic collision that injured his passenger. Jimenez does not contend that the trial court failed to consider his rehabilitative efforts in prison. In light of this record, Jimenez has not demonstrated an abuse of discretion.

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ZUKIN, P. J.

We concur:

TAMZARIAN, J.                    VAN ROOYEN, J.*

*Judge of the San Luis Obispo Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.